Cathcart vs. Foulke & Sons.

## ROBERT CATHCART vs. JOSEPH FOULKE AND SONS.

1. The owner of a slave instituted a suit against the plaintiffs as part owner of a steamboat, and recovered damages against him for the loss of his slave while upon the boat employed as cook. Plaintiff now sues defendants as joint owners with him at the time of the loss for an amount of the judgment against him equal to their interest in the boat. Held, that to entitle him to recover, it devolves upon him to make out in this case a state of facts which would entitle the owner of the slave in the first instance to a judgment against the owners of the boat.

2. Defendants purchased plaintiff's interest in a steamboat, and agreed with him amongst other things "to pay all the *claims* against said boat, and hold (plaintiff) harmless from all such claims." Held, that the claims alluded to are only the debts and liabilities due by the boat, by virtue of her contracts, and not mere rights of action against the officers or owners thereof for supposed neglect of duty as bailees.

## APPEAL from St. Louis Court of Common Pleas.

LESLIE & LORD, for appellant.

A claim of this character is clearly actionable against the boat by name if brought within six months after the right of action accrues. And omission so to do only affects the remedy, and the rights of Cathcart under his indemnity would not be affected. R. Statutes, p. 181.

It is not pretended that Cathcart had any more personal agency, in the loss of the negro, than Foulke and sons had, and if the loss had happened through the negligence of Capt. Field, to whom is entrusted the command of the boat, Foulke and sons would, in connection with Cathcart as owners of the boat have been liable in case to the owner of the negro; and consequently if Cathcart by suit was compelled to pay, he is entitled in law to contribution independent of the contract and a legal deduction, has a right to full indemnity by the letter and spirit of the covenant of the defendants contained in the said bill of sale. 12 Eng. Com. Law R. 198.

The suit for the recovery of the damages for the loss of the negro, was commenced against the owners of the boat before the statute of limitations under the boat and vessel law had run.

The plaintiff in the suit for the loss of the negro having elected to sue the owners does not change the rights of this plaintiff, he had no control of the remedy which was concurrent vs. the boat by name or the owners.

What one partner voluntarily pays in good faith on a claim against the firm is properly chargeable to the firm and may after dissolution be recovered by way of contribution. The money paid by Cathcart for the loss of the negro was paid long after the dissolution, and therefore, a suit for contribution is the appropriate remedy. And it makes no difference whether the money so paid might have been avoided by defending a suit for it so that it was done in good faith.

It is contended that the two suits referred to in the record, the one at law and the one in chancery have conclusively adjudicated the right to recover for the loss of the negro against all the owners of the boat. The judgment at law though by default is the same as if not by default. It also appears from the case at law and chancery that the judgment being rendered by default was no fault of Cathcart in point of fact.

TODD & KRUM, for appellees.

First. The defendants are not liable on their agreement between them and the plaintiff dated March 25th, 1844, set forth in the record. That agreement provides that the defendants are, "to pay all the claims against said boat, and hold the said Cathcart harmless from all such claims."

Cathcart vs. Foulke and Sons.

It is manifest from the language used by the parties, considered in connection with the subject matter of the contract, that they intended to embrace in the term claims such as were liens and incumbrances upon said boat, and nothing more. Sec. 35 of the act in relation to boats and vessels.

The contract must be so interpreted as to give effect to the intention of the parties as far as it is legally and mutually understood. Verba intentioni non e contra debent inservire. Story on Cont. page 149.

The claim of Matson for the loss of the negro was not a lien against the boat, nor could the boat have been sued therefor by name under the act concerning boats and vessels.

Second : The plaintiff and defendants cannot be regarded as copartners—they were merely joint owners of a carrying vessel, and their rights and liabilities must be settled by the law regulating and governing such joint owners. Abbot on Shipping, 97; 3 Kent, 154; Story on Part. 456 ; 7 Conn. Rep. 95

Third : The plaintiff cannot maintain his action upon the facts agreed, against the defendants for contribution. 1st. Because before the plaintiff can recover by way of contribution, it devolves on him to show that he and the defendants were jointly liable for the loss of the negro. 2d. In this suit he takes the place of Matson, and must show the liability of the defendants (himself, Cathcart included) to Matson. 3d. The judgment and proceedings in the case of Matson vs. Cathcart, does not establish any such liability. 4th. The judgments and proceedings in that case are not evidence against these defendants—they are neither parties nor privies thereto, and consequently not concluded by the proceedings in that case. 14 J. R. 318; 2 Greenleaf, § 116.

Fourth : From the facts it is apparent that the loss of the negro was purely accidental—the act of God ; therefore there was no liability incurred for his loss by the parties who employed the negro, or by the joint owners of the boat. 13 J. R. 211; 1 Cow. 109; 2 Esp. 527; 15 Mass. Rep. 521.

Fifth : It is apparent from all the facts in the case that the plaintiff had judgment against him—not by reason of any legal or equitable liability to the owner of the negro, but by reason of the neglect of the plaintiff. This is shown by the record in the case of Matson vs. Cathcart; 13 Pick. 484.

Sixth : To maintain an action for contribution, a joint and equal liability for the debt to which the defendant is called to contribute must be established.

Seventh : An action for contribution cannot be maintained between joint wrong doers. 8 T. R. 186 ; 1 Vesey & B, 114, 118.

Eighth : One partner cannot maintain an action at law against another until the whole partnership business is reduced to a single debt. 13 Pick. Rep. 484.

RYLAND, Judge, delivered the opinion of the court.

This case comes before this court by appeal from the St. Louis court of common pleas.

The parties below submitted the case to the determination of the court of common pleas, upon an agreed statement of facts, and that court found for the defendants.

The plaintiff moved for a new trial, which being denied him, he brings the case to this court.

It appears that the facts embodied in this case, have in some measure been twice in this court before. Matson sued Field & Cathcart, the

present plaintiffs, to recover the value of a negro, which had been hired to them and which was lost. In this suit judgment was rendered in favor of Matson by default at September term, 1843, and which was perfected by final judgment on 4th April, 1844. Field & Cathcart moved to set aside this judgment, which motion was overruled, and they appealed to this court, where the judgment below was affirmed. See 8th Mo. Reports, 686. Field & Cathcart then filed their bill in chancery in the circuit court of St. Louis county, praying to have this judgment of Matson against them enjoined perpetually. The circuit court granted the prayer of this bill, enjoined the judgment, and Matson appealed to this court, which reversed the decree of the circuit court and dismissed the bill. See 10 Mo. Rep. 100. Cathcart being compelled to pay Matson, brings this present suit against Foulke and sons for contribution.

The following is the agreed statements, viz : On or about the tenth day of September, in the year 1842, the said defendants were copartners in trade and doing business in the city of New York, in the State of New York, under the name, style and firm of Joseph Foulke and sons. On or about the day and year last aforesaid, the said defendants were the owners of a steamboat called the "Louisa," her tackel, apparel and furniture ; which boat was used in navigating the waters of the Mississippi river and its tributaries. On or about the 20th day of September, 1842, the said defendants sold and conveyed one undivided fourth of the said steamboat, her tackle, apparel and furniture, to one Spencer Field, who afterwards, but before the hiring of the negro man hereinafter mentioned, sold two-thirds of his said one-fourth of the said steamboat, her tackle, apparel and furniture, to Robert Cathcart, the said plaintiff. While the said boat, her tackle, apparel and furniture was thus jointly owned as above mentioned by the said plaintiff, the said defendants and the said Spencer Field, the said Field was entrusted by the said joint owners with the conduct and management of the said boat in the carrying trade and lawful navigation of the said Mississippi river and its tributaries, the said Field acting as captain, and the said plaintiff as engineer on said boat. While the said plaintiff, the said defendants, and the said Spencer Field, were each joint owners as above mentioned, and while the said Field and the said plaintiff were acting, the former as captain and the latter as engineer as aforesaid, on said boat, the said Spencer Field contracted with one James Matson, trustee of Eliza P. Grimes and her heirs, for the hire and service of a negro man called "Henry," as a cook upon the said boat, and the said negro man went upon the said boat and served in the capacity of cook, and while thus employed he fell through a hole in the

floor of the cook room of said boat into the Mississippi river and was drowned. Afterwards, and at the September term, 1843, of the St. Louis court of common pleas, the said James Matson, trustee as aforesaid, instituted a suit at law in form of an action of trespass on the case in the said court against the said Robert Cathcart and Spencer Field, as part owners of said steamboat, to recover damages, &c., for the loss of the said negro, the declaration and the record of proceedings in the said action, it is agreed shall be considered as a part of this statement. After final judgment was rendered in the said suit against the said plaintiff and Field, as stated in said record, they prayed an appeal therefrom to the supreme court of the State of Missouri, where the said judgment was affirmed, and after the said judgment was affirmed as aforesaid, the said Cathcart & Field, at the April term, A. D. 1845, of the St. Louis circuit court, filed their bill in equity against the said James Matson, trustee as aforesaid, praying relief against the said judgment, &c., which bill, and the record of the proceedings in the said equity cause, it is agreed shall be considered as a part of this statement. After the passing of the decree in the said equity cause, the said Matson appealed therefrom to the said supreme court, by which last mentioned court said decree was reversed, and the said bill dismissed. Afterwards, on or about the 18th day of September, 1847, the said Robert Cathcart was coerced by virtue of an execution issued on the said judgment in the said court of common pleas to pay and satisfy the same, and the said Cathcart on or about the day and year last aforesaid, did pay and satisfy said execution, amounting to the sum of $766,01, being the amount of said judgment, interests and costs, which amount, with the sum of $864 previously paid by said Cathcart for costs accruing in the supreme court, make the sum of $774,65, which the said Cathcart has paid by reason of the said action of trespass on the case.

It is further agreed, that at the time of commencement of the said action of trespass on the case against said Cathcart & Field, the said Field was generally reported to be insolvent, and ever since hath been and is now so reputed.

The said Joseph Foulke and sons, the said defendants in this suit, were not at any time personally notified or informed by the said Cathcart & Field, or by either of them, of the institution or pendency of the said action of trespass on the case, nor were the said Joseph Foulke and sons (the defendants herein) at any time personally notified or requested by the said Cathcart & Field, or by either of them, to defend or aid, or assist in the defence of the said action. Nor had the said Joseph Foulke and sons (the said defendants herein) any agency or di-

rection whatever in the bringing or conducting of the said equity cause above mentioned at the time the said Cathcart & Field, and the said Joseph Foulke and sons were joint owners of the said steamboat as aforesaid, and also at the time of the institution of the said action of trespass on the case, the said Joseph Foulke and sons (who resided, and ever since have resided in the city and State of New York,) were owners of property situate in the city of St. Louis, and with a view to its management and protection, they employed W. W. Thompson & Co., (which firm was composed of W. W. Thompson and Edward H. Dix, and both of whom then resided in the city of St. Louis) to act as agents of the said Joseph Foulke and sons, for the purpose of managing and protecting their said property situated in the said city of St. Louis, including their interest in the said steamboat "Louisa." But the said Thompson & Dix were not the agents of the said Joseph Foulke and sons, nor authorized by them to act for them in respect to any other matter, nor for any other purpose than as above stated.

It is admitted that soon after interlocutory judgment was rendered against said Cathcart and Field in the said action of trespass on the case the said Cathcart informed the said Edward H. Dix of the pendency of the said suit, but the said Thompson and Dix were not, nor were either of them at any time notified or requested, as the agents of the said Joseph Foulke & Sons, to defend or assist in the defence of said action, nor were the said Thompson & Dix, or either of them, at any time requested by said Cathcart and Field, or either of them, to notify said Foulke & Sons of the pendency of the said action against said Cathcart & Field, nor did the said Thompson & Dix, or either of them, at any time inform the said Joseph Foulke & Sons of the pendency of said suit.

It is further agreed that on the 25th day of March, 1844, the said Cathcart sold and conveyed all his right, title and interest in the said boat, her tackle, apparel and furniture, to Joseph Foulke & Sons, (the defendants herein) which sale is evidenced by an instrument of writing duly executed by authority of the said Joseph Foulke & Sons, and which writing it is agreed shall be taken and considered as a part of this statement, and is in the words and figures following.

"Know all men by these presents, that I, Robert Cathcart, of the city of St. Louis, State of Missouri, for and in consideration of the sum of five-hundred dollars, to me in hand paid by Messrs. Joseph Foulke & Sons, of the city and State of New York, the receipt of which is hereby acknowledged, have granted, bargained, sold, confirmed and delivered, and by these presents do grant, bargain, sell, confirm and deliver

unto the said Joseph Foulke and Sons, and their heirs and assigns for-
ever, the one undivided sixth part of the steamboat "Louisa," her en-
gine, tackle, apparel and furniture, as she now lies at the wharf in the
city of St. Louis, subject to all liens and encumbrances against said
boat.    It being understood that the said Joseph Foulke & Sons are
hereby fully authorized to collect all claims due or owing to said boat,
and the same when collected to appropriate to their own proper use and
benefit, and it is also understood and agreed that the said purchasers
are to pay all the claims against said boat, and hold the said Cathcart
harmless from all such claims.

"In witness whereof the said Robert Cathcart, in his own proper per-
son, and the said purchasers, by their agent, Alexander Hamilton, of
St. Louis, Missouri, have hereunto set their hands and seals, this, the
twenty-fifth day of March, in the year of our Lord one thousand eight
hundred and forty-four.    Executed in duplicate.

ROBERT CATHCART,          [SEAL.]

JOSEPH FOULKE & SONS,    [SEAL.]

By Att'y A. HAMILTON."

It is further agreed that the said Spencer Field also sold and con-
veyed all his interest and property in the said boat, her tackle, apparel
and furniture to the said Joseph Foulke & Sons, which sale of the in-
terest of the said Field last mentioned, was made sometime after the in-
stitution of the said action of trespass on the case, and after judgment
had been rendered therein, but before the said sale by the said Cath-
cart above mentioned.

Now it is stipulated and agreed by the parties to the above entitled cause
that the foregoing statement of facts may be submitted to the said court of
common pleas as an agreed case, and if the said court upon the facts
aforesaid shall be of opinion that the said plaintiff is entitled to recover
against the said defendants for the said sum of money paid by said plain-
tiff under said execution above mentioned, or any part thereof, then and
in such case it is agreed that the judgment shall be entered herein
against the said defendants for such amount as the said court upon the
facts aforesaid, shall determine they are liable for, together with the
costs of this proceeding, to be taxed, &c. ; but if the said court, upon
the facts aforesaid, shall be of opinion that said plaintiff is not entitled
to recover the said sum, or any part thereof, against said defendants
then and in such case judgment shall be rendered herein against said
plaintiff for costs, &c.    And it is further agreed, that either party may,
after final judgment herein, prosecute an appeal or writ of error to the

supreme court, and this agreement shall not be construed into a release of errors, &c.

From the above statement, it is plain that the grounds upon which the plaintiff in error relies for a reversal of the judgment are but two :

*First*, The liability of the defendants in error as part owners of the steamboat, to make contribution of a portion of the damages recovered by Matson against Cathcart and Field, for the loss of the negro man, while in the employment of the owners of the boat.

*Second*, Their liability under the contract of sale and covenant therein by Foulke & Sons "to pay all the claims against said boat, and hold the said Cathcart harmless from all such claims."

These points embrace the whole case, either one of which being for the plaintiff in error will require a reversal of the judgment of the court below.

Let us examine these points.

*First*, The liability as part owners. The facts as agreed in this case, leave no doubt in our minds that Foulke & Sons had no notice of the pendency of the suit of Matson vs. Cathcart and Field. There is nothing shewing us that they were privy to said suit. They are not parties on the record. They are not therefore concluded by the said judgment against Cathcart and Field.

In order, then, to force them to contribute a portion of the damages thus recovered against Cathcart and Field, as part owners of the steam boat, for the said loss, it becomes necessary in this action for the plaintiff to make out such a state of facts as would justify the court in the first instance in finding for the owner of the negro against the hirers, that is, against the owners of the boat. In this agreed statement, there is not sufficient proof, in our opinion to warrant or authorize such a finding, and if Cathcart and Field had made proper defence to the action brought against them by Matson, in all probability there would have been no cause ever to have called on Foulke & Sons for contribution.

The negro man lost is said to have fallen through a hole in the cookhouse of the boat into the Mississippi and drowned. It may have been a mere accident, a causalty, happening without any blame or neglect on the part of the owners of the boat. We are unable to say, from all that appears in this case, that the owners of the boat were ever liable for the loss of the negro. There is nothing in this first point, therefore, requiring our interference.

Whether the claim of the owner of the negro man, for his loss is properly such an one as is included in the contract, between Cathcart and

Cathcart vs. Foulke and Sons.

Foulke & Sons, above set out, or not, is the last and only remaining point for our consideration.

If we are to construe this contract, as it was most probably understood and intended at the time of its making by the contracting parties, there will be but little trouble, in our opinion, in coming to the conclusion that such a claim as the one in controversy was never thought of by them; and is not embraced in the said contract.

The claims alluded to, (in our opinion) are such as are liens against the boat, debts due by the boat, or liabilities the boat may be under by virtue of her contracts; not the mere right of action which a party may imagine he has against the owners of the boat, for a supposed neglect of duty, creating a supposed liability on their part as bailees; debts or demands or claims against the boats were meant, and not mere rights of action against the officers or owners thereof.

We entertain the opinion that Cathcart himself never considered the demand for which Matson had brought suit against him, as one properly against the boat, or as one calculated to cause him any trouble or uneasiness. He never pretended to give Foulke & Sons, though they had agents in St. Louis, any notice of the suit. No steps were taken by him to inform them or to request them to assist in the defence of a suit brought by a person demanding damages for the accidental drowning of a negro hired as cook on the boat of which he and they were owners.

This may be a hard case on the part of Cathcart : he has been made to pay a large sum of money, which in all probability he would have avoided, had proper defence been made in time.

But this neglect to protect himself, gives him no just claim to contribution from the other part owners of the boat.

The hardship of this case, proceeds in part from the unbending rigor practiced by the inferior courts in overruling motions to set aside judgments by default; and the practice of this court heretofore of refusing to control the discretion of the inferior courts in such matters.

The practice of this court was designed to induce a liberal exercise of such discretionary powers on the part of the inferior courts; but it has failed of its intention, if we are to judge from the number of cases which come up to this court, involving only the exercise of such power.

The judgment below must be affirmed.